GIBSON, DUNN & CRUTCHER LLP
ETHAN D. DETTMER, SBN 196046
JAIME D. BYRNES, SBN 237991
One Montgomery Street
San Francisco, California 94104
Telephone: (415) 393-8200
Facsimile: (415) 986-5309
Email: edettmer@gibsondunn.com

Attorneys for Defendant
BALLY TECHNOLOGIES, INC.

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| STEPHEN RACE,<br><br>        Plaintiff,<br><br>    v.<br><br>BALLY TECHNOLOGIES, INC.,<br>a Nevada Corporation,<br><br>        Defendant. | CASE NO. C07-5475 JCS<br><br>**NOTICE OF MOTION AND MOTION TO CHANGE VENUE TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEVADA PURSUANT TO 28 U.S.C. § 1404(a); SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:    December 14, 2007<br>Time:   10:30 am<br>Judge:  Hon. Joseph C. Spero |

Gibson, Dunn &
Crutcher LLP

NOTICE OF MOTION & MOTION TO CHANGE VENUE - 28 U.S.C. § 1404(a)            CASE NO. C07-5475 JCS

NOTICE IS HEREBY GIVEN that on December 14, at 10:30 a.m., or as soon thereafter as the matter may be heard in the courtroom of the Honorable Joseph C. Spero, Magistrate Judge of the above-entitled Court, Courtroom A, 450 Golden Gate Avenue, San Francisco, California 94102, defendant Bally Technologies, Inc., shall and hereby does move the Court for an order transferring this action to the United States District Court for the District of Nevada.[1] This motion is made under 28 U.S.C. §1404(a), on the grounds that the present action might have been brought in the District of Nevada; that the District of Nevada is more convenient for witnesses and has a closer relationship to the events alleged in the complaint than does the present forum, which has little, if any, relationship to these events; and that transfer will improve access to evidence and promote judicial economy.

The motion requesting an order transferring venue will be based on this Notice of Motion and Motion; the incorporated memorandum of points and authorities in support of the motion; the declaration of Mark Lerner in support of the motion; argument of counsel; all the records and files in this action; and all additional matters of which the Court may take judicial notice.

DATED: November 2, 2007          GIBSON, DUNN & CRUTCHER LLP


By: _____/s/_____
         Jaime D. Byrnes

Attorneys for Defendant Bally Technologies, Inc.

---

[1] Defendant is concurrently filing its Declination to Proceed Before a Magistrate Judge and Request for Reassignment to a United States District Judge. Defendant will re-notice this motion for hearing by the US District Judge once the reassignment is completed.

# MEMORANDUM OF POINTS & AUTHORITIES

## I. INTRODUCTION

This case involves a dispute between Bally Technologies, Inc., and one of its former directors over the terms of compensation, which are set by the company's by-laws. Bally is a Nevada Corporation, with its principle place of business and headquarters in Las Vegas, Nevada. The relevant by-laws were adopted in Las Vegas, Nevada. The calculation and payment of the stock options occurred in Las Vegas, Nevada, and the decision not to issue any additional options was also made and communicated to Plaintiff from Las Vegas, Nevada. The only link between California and this case is that Plaintiff resides here and alleges that he accepted his seat on the Board of Directors of a Nevada Company from California. However, this dispute is not about whether a contract was formed. It is about Bally's performance of its obligation to issue certain stock options to Plaintiff; the place of performance and alleged breach are both Las Vegas, Nevada. The likely witnesses are predominantly current and former Bally employees and Directors, for whom Nevada is a substantially more convenient forum than California – where no witness other than plaintiff himself is known to reside. Likewise, the vast majority of evidence in this case is likely to be located at Bally's Las Vegas headquarters.

Placed upon a scale, it is clear that the overwhelming center of evidence and the clear locus of this case is Nevada. The *only* counterweight is that Plaintiff happens to be a California resident. While ordinarily residency might be an important factor, this dispute involves fundamental issues of internal corporate governance, which should be heard by the Nevada courts.

## II. STATEMENT OF FACTS

Defendant Bally is a Nevada Corporation, with its principal place of business in Las Vegas, Nevada. *See* Declaration of Mark Lerner ("Lerner Decl.") at ¶ 3. Bally is a publicly traded corporation, traded on the New York Stock Exchange; prior to March 13, 2006, Bally was traded under the name Alliance Gaming Corporation. *Id.* Bally is a gaming company that designs, manufactures, operates and distributes slot machines and related systems to casinos and other

customers. *Id*. Bally is not registered to do business in California, nor does it conduct business in California. *Id.*[2]

Race filed this action on September 17, 2007, alleging that Bally did not compensate him for his final year of service on Bally's Board of Directors. The Complaint includes two counts – breach of contract and specific performance – both of which arise out of Race's service on Bally's Board.

On May 24, 2005, Jacques André, the Chairman of Bally's Nomination and Governance Committee ("Nomination Committee") telephoned Race, asking whether he would be interested in serving on Bally's Board of Directors. *Id.* at ¶ 4. Race indicated that he would like to be considered for the vacant Board seat. *Id*. The Board conducted a telephonic vote on May 25, 2005, in which they elected Race to the vacant seat. *Id*. The same day, André called Race and informed him that he had been elected to the Board. *Id*.

Race thereafter served on the Board from June 2005 to May 2007. *Id*. at ¶ 5. During his two years as a Director, Race was required to attend and did attend the Board's meetings, which with one exception—a meeting held in Atlantic City, New Jersey—were all held in Las Vegas, Nevada. *Id*. The Board did not hold any meetings in California. *Id*. In addition to the Board's regularly scheduled meetings, the Board convened by telephone on a number of occasions, during which Directors telephoned in from their respective locations. *Id*.

Bally's compensation to its directors is governed in pertinent part by resolutions adopted by the Bally board of directors at meetings in Las Vegas, Nevada, on October 27, 2004, and April 22, 2003. *Id.* at ¶ 6. All cash payments made to Bally's Directors are calculated and paid from the corporate headquarters in Las Vegas, Nevada. *Id*. All grants of stock options are also calculated and issued from the corporate headquarters in Las Vegas, Nevada. *Id*. All of the stock option agreements between Bally and Race expressly state that they are governed by Nevada law. *Id.*

As set forth above, the events underlying Plaintiff's claims all took place in Nevada and are governed by Nevada law. Accordingly, this matter should be heard in the judicial district where the

---

[2] Bally does have one subsidiary (whose activities are unrelated to this action) that is registered to and does conduct business in California.

alleged breach took place and the vast majority of the evidence and the witnesses may be found: the District of Nevada.

### III. ANALYSIS

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "Under § 1404(a), the district court has discretion to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir.), cert. denied, 531 U.S. 928 (2000). This inquiry involves consideration of the factors relevant to the circumstances of each case, which may include, *inter alia*, familiarity with the relevant law, nexus with the action, location of witnesses and evidence, convenience to the parties, location of contract negotiations, parties' contacts with the forum, and the plaintiff's choice of forum. *See Gerin v. Aegon USA, Inc.*, No. C06-5407, 2007 WL 1033472, at *4 (N.D. Cal., Apr. 4, 2007) (citing *Jones*, 211 F.3d at 498-99); 17 MOORE'S FEDERAL PRACTICE § 111.13(1)(b) (Matthew Bender 3d ed.).

This case could have originally been brought in the United States District Court for the District of Nevada. Federal diversity jurisdiction exists; Nevada is both the place of incorporation and primary place of business of Bally; and almost all of the events giving rise to Plaintiff's claims took place within the District of Nevada. See 28 U.S.C. § 1391. In addition, as detailed below the relevant factors weigh strongly in favor of transfer to that District.

**A.     Nevada Is Familiar With The Relevant Law**

"It has long been settled doctrine that a court -- state or federal -- sitting in one State will as a general rule decline to interfere with or control by injunction or otherwise the management of the internal affairs of a corporation organized under the laws of another State but will leave controversies as to such matters to the courts of the State of the domicile." *Rogers v. Guaranty Trust Co.*, 288 U.S. 123, 130 (1933); *accord Edgar v. Mite Corp.*, 457 U.S. 624, 645 (1982) ("The internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs -- matters peculiar to the relationships among or between

the corporation and its current officers, directors, and shareholders -- because otherwise a corporation could be faced with conflicting demands.")

Thus, a court sitting in diversity jurisdiction, in a dispute regarding stock options, must apply the law of the state of incorporation. "Federal jurisdiction is predicated on diversity of citizenship of the parties; thus, state law rules. The issuance of stock options involves the internal affairs of [the company], and is governed by the law of the state of its incorporation. . . ."). *Gaynor v. Buckley*, 318 F.2d 432, 434 (9th Cir. 1963).

"[I]t has long been recognized that: 'There is an appropriateness . . . in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.'" *Van Dusen v. Barrack*, 376 U.S. 612, 643 (1964) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947)); *accord Engle v. CBS, Inc.*, 886 F. Supp. 728, 733 (C.D. Cal. 1995).

As Nevada law applies, this case is most appropriately heard in Nevada under the *Gulf Oil* framework. This factor weighs in favor of transfer to Nevada.

**B.   The Events At Issue Took Place In Nevada**

This factor weighs heavily in favor of transfer, since *every* event related to director compensation occurred in Nevada. The terms of director compensation were set in Las Vegas, Nevada. Lerner Decl. at ¶ 6. The calculation of the compensation due under that compensation plan was made in Las Vegas, Nevada. *Id.* The payment of all monies and issuance of all options was made in Las Vegas, Nevada. *Id.* Bally's decision to and subsequent refusal to pay the options demanded by Race occurred in Las Vegas, Nevada. *Id.*

All of the disputed issues of contract performance – and alleged lack thereof – set forth in the Complaint took place in Nevada. None of the key events relating to either Bally's duty to perform or its alleged breach took place in this district. This factor weighs in favor of transfer to Nevada.

**C.   Most Evidence Is Located In Or Near Nevada**

Most of the evidence that conceivably would be relevant to Plaintiff's claims and defendants' defenses is located in or near the District of Nevada. Bally's software, facilities, and hard copy records are maintained by employees based in Bally's Las Vegas headquarters. *Id.* at ¶ 9. Indeed,

the only relevant evidence that will likely be found in this district are those documents already in Plaintiff's possession. *Id.* This factor, too, thus weighs in favor of transfer.

### D. The District Of Nevada Is Vastly More Convenient To Witnesses

The next factor is the convenience of witnesses. Here, the proper focus is on the "materiality and importance of the anticipated witnesses' testimony." *See Gates Learjet Corp. v. Jansen*, 743 F. 2d 1325, 1335 (9th Cir. 1984).

Should this case proceed to discovery and beyond, Nevada is far more convenient for the vast majority of potential witnesses. All of Bally's senior managers and Directors whom would have knowledge of Plaintiff's service on the Board, compensation received, and Director election and compensation policies, either reside near Las Vegas, Nevada, or travel there regularly for business with Bally. Lerner Decl. at ¶ 8. The individuals responsible for issuing the stock options reside in and around Las Vegas, Nevada. *Id.* At this stage Defendant is not aware of any potential witnesses, save Plaintiff himself or his counsel, who reside in the Northern District of California. *Id.*

This factor further weighs in favor of transfer.

### E. The District Of Nevada Is At Least As Convenient To The Parties As This District

The District of Nevada provides a significantly more convenient forum for defendants than does the Northern District of California. As discussed, Bally is a Nevada Corporation with its principle place of business in Las Vegas, Nevada. Plaintiff alleges that he is a San Mateo resident. On balance, therefore, this factor weighs in favor of transfer, or at least does not weigh against it.

### F. Location Where Contract Was Negotiated and Executed

As a publicly traded company, the compensation of Bally's Directors is governed by the Bylaws and not negotiated on a one-off basis. The negotiation of the terms of the contract therefore occurred in Las Vegas, Nevada. Lerner Decl. at ¶ 6. The conversations between André and Plaintiff regarding Plaintiff serving on the Board occurred telephonically, with André in New Jersey and Race in California. *Id.* at ¶ 4. On balance, therefore, this factor weighs in favor of transfer, or at least does not weigh against it.

### G. Parties' Contacts with the Forum

Plaintiff resides in California, but accepted a role as a Director with a Las Vegas, Nevada corporation. Bally is not certified to do business nor does it do any business in California. *Id.* at ¶ 3. Its only contact with the forum was a result of Plaintiff's unilateral decision to conduct his business with Bally from California; specifically, the telephonic calls to and documents sent to Plaintiff in California throughout the course of his relationship with André and Bally. *Id*. at ¶ 5. On balance, therefore, this factor weighs in favor of transfer, or at least does not weigh against it.

### H. Plaintiff's Choice of Forum

Although ordinarily the plaintiff's choice of forum is accorded deference, "[i]f the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal consideration." *Center for Biological Diversity & Pacific Env. v. Kempthorne*, No. C07-0894, 2007 WL 2023515, at *3 (N.D. Cal., July 12, 2007) (quoting *Pacific Car and Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968).

As described above, the operative facts did not occur in California. This dispute centers on Bally's obligation to grant certain options to plaintiff; the calculation of the options due occurred in Nevada. Lerner Decl. at ¶ 6. The performance of these disputed obligations – the issuance of options – did occur and was intended to occur in Nevada. *Id*. Bally's decision that it had performed its contractual obligations and refusal to grant additional options also occurred in Nevada. *Id*.

Furthermore, as described above, Nevada has the greater interest in this dispute because it involves a matter of internal corporate governance. Indeed, Bally does not even do business in California. *Id*. at ¶ 3.

Thus, although ordinarily this factor weighs in favor of plaintiffs, in this case, it is entitled to only minimal consideration.

### I. The Costs Of Litigating In Nevada Will Be Far Less Than Litigating Here

As previously discussed, the majority of potential witnesses and evidence relevant to this case are located in or near Las Vegas, Nevada. Among potential witnesses, only Plaintiff himself purports to be a California resident. Furthermore, the only evidence in California is likely to be those few

documents in Plaintiff's possession. The travel costs of calling witnesses for appearance at any trial and of accessing evidence would therefore be far less in Nevada. This factor, therefore, weighs in favor of transfer. *See Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (Section 1404(a) is designed to "prevent the waste of time, energy and money").

## IV.  CONCLUSION

Transfer to the District of Nevada is logical for a case governed by Nevada law, would substantially benefit the witnesses, would bring this action closer to relevant evidence and the location of the acts underlying Plaintiff's claims, and would reduce costs. Accordingly, defendants request that the Court transfer this action to the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 1404(a).

DATED:  November 2, 2007          GIBSON, DUNN & CRUTCHER LLP


By:_____/s/_____

Jaime D. Byrnes

Attorneys for Defendant Bally Technologies, Inc.