1  Cliff Palefsky, Esq. (State Bar No. 77683)
2  Carolyn Leary (State Bar No. 226845)
   McGUINN, HILLSMAN & PALEFSKY
3  535 Pacific Avenue
   San Francisco, CA 94133
4  Telephone: (415) 421-9292

5  Attorneys for Plaintiff,
   STEPHEN RACE
6

7

8           UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF CALIFORNIA
9              SAN FRANCISCO DIVISION

10

11

12 | STEPHEN RACE,                          | Case No. C07-5475 CW
13 |                                        | e-filing case
   |        Plaintiff,
14 |                                        | **PLAINTIFF'S OPPOSITION TO
   | v.                                     | DEFENDANT'S MOTION TO
15 |                                        | CHANGE VENUE TO THE UNITED
   | BALLY TECHNOLOGIES, INC., and          | STATES DISTRICT COURT FOR
16 | DOES 1 through 10,                     | THE DISTRICT OF NEVADA
   |                                        | PURSUANT TO 28 U.S.C. § 1404(a)**
17 |        Defendants.
   |                                        | Hearing Date:  Jan. 10, 2008
18 |                                        | Time:          2:00 p.m.
   |                                        | Judge:         Hon. Claudia Wilken
19
20                                           Accompanying Papers:
21                                           1) Declaration of Stephen Race
                                             2) [Proposed] Order Denying
22                                              Motion To Change Venue

23

24

25

26

27

28

McGUINN, HILLSMAN
& PALEFSKY            Plaintiff's Opposition to Defendant's Motion to Change Venue            1
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This action, originally filed in San Mateo County Superior Court and subsequently removed to this Court, is a very simple and straightforward breach of contract dispute. Defendant BALLY TECHNOLOGIES, INC. ("Bally") and Plaintiff STEPHEN RACE ("Race") entered into an oral agreement regarding Race's compensation as a member of the Bally Board of Directors ("The Compensation Agreement"). The Compensation Agreement, which was executed in California (where Race resides), required Bally to award Race certain stock options, which Defendants failed to do.

Bally now asserts that Nevada would be a more convenient forum in which to enforce this California contract and moves the Court to transfer this matter pursuant to 28 U.S.C. § 1404(a). In order to meet its burden under § 1404(a), Bally must show <u>compelling reasons</u> to disrupt Race's choice of forum. Bally has not offered any valid factual or legal grounds for transferring this action to Nevada. Instead, Bally has attempted to contort this "garden variety" breach of contract action into a complicated matter of "internal corporate affairs." In so doing, Defendants offer a misleading rendition of the material facts and an off-base application of the relevant law. When this matter is viewed through the proper lens, it is clear that the Northern District is the more appropriate forum and that Defendants' Motion to Transfer should be denied.

## II. STATEMENT OF FACTS

Plaintiff STEPHEN RACE ("Race") has been a resident of California for the last fifteen years. See Declaration of Stephen Race ("Race Decl.") at ¶2. In 2005, Plaintiff was living in Orinda, California and working in San Mateo County. *Id.* In May of that

year, Race was contacted by Jac Andre, who called Race from Andre's office in New Jersey. *Id.* at ¶ 3. In the course of their conversation, Andre offered Race a position on Bally's Board of Directors. *Id.* He also informed Race that, as a Director, Race would be entitled to an initial grant of fully vested options to purchase 50,000 shares of Bally common stock immediately upon appointment, as well as an annual grant of fully vested options to purchase 30,000 shares of common stock. *Id.* From his office in San Mateo County, California, Race accepted Defendant's offer to serve as Director and accepted the terms of the compensation arrangement ("the Compensation Agreement"). *Id.*

In late June 2005, Plaintiff was officially elected to the Board, at which time he was granted the initial, fully-vested option to purchase 50,000 shares. *Id.* at ¶ 4. Following the annual shareholders' meeting on March 6, 2006, Plaintiff received his first additional annual grant of fully vested options. *Id.* at ¶ 5. The additional grant was prorated. *Id.*

Plaintiff's term on the Board ended in May 2007. *Id.* at ¶ 6. At that time, Plaintiff was entitled to a grant of fully vested options for the prior year of his service as a director. Race learned that Bally intended to breach the Compensation Agreement when Kevin Verner called Race while Race was en route between California and Washington, D.C. and informed him that Bally would not issue the stock options to which Race was entitled. *Id.* at ¶ 7.

As part of his duties as a Director, Race served on the Audit Committee. *Id.* at ¶ 8. The vast majority of the Audit Committee meetings took place telephonically, with Race participating from either his residence or his place of work in California. *Id.*

During the time that Race served as a Bally Director, Bally sold a large number of gaming devices and slot floor management software in the state of California. *Id.* at ¶ 9. Bally also leased some of these machines to various businesses in California. *Id.* Finally, Bally had a number of contracts with residents of the state of California. *Id.*

## III. ANALYSIS

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)(citations omitted). Although a change of venue is within the trial court's discretion, it should not be freely granted. *Fibra-Steel, Inc. v. Astoria Industries, Inc.*, 708 F. Supp. 255, 257 (D. Mo. 1989).

The following factors are relevant to the court's adjudication of a Section 1404(a) motion:

- the plaintiff's choice of forum,
- the location where the relevant agreements were negotiated and executed,
- the state that is most familiar with the governing law,
- the respective parties' contacts with the forum,
- the contacts relating to the plaintiff's cause of action in the chosen forum,
- the differences in the costs of litigation in the two forums,
- the availability of compulsory process to compel attendance of unwilling non-party witnesses, and
- the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). The Northern District of California utilizes slightly modified factors that include consideration of

convenience to parties and witnesses, feasability of consolidation of other claims, local interest in the controversy, and the court congestion of the two forums. *See Williams v. Bowman,* 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001); *Langford v. Ameritanz, Inc.,* No. 05-1271, 2006 U.S. Dist. LEXIS 32823, at *6-7 (N.D. Cal. May 13, 2006). The burden is on the moving party to demonstrate that the balance of conveniences favors the transfer. *Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270, 279 (9th Cir. 1979).

A. <u>There is a particularly strong presumption in favor of Race's choice of forum because Race resides in the Northern District of California.</u>

Generally, "great weight [is] accorded plaintiff's choice of forum," *Lou v. Belzberg,* 834 F.2d 730, 739 (9th Cir. 1987). Even more weight should be accorded that choice where, as here, the plaintiff resides in the chosen forum. *See Healthtrac Corp. v. Caterpillar, Inc.,* No. 05-2727, 2005 U.S.Dist. LEXIS 25272, at *9 (N.D.Cal. Oct. 26, 2005); see also 17 MOORE'S FEDERAL PRACTICE § 111.13(1)(b)(Matthew Bender 3d ed.). Unless a defendant makes a strong showing of inconvenience, the plaintiff's choice of forum should rarely be disturbed. *Applied Elastomerics, Inc. v. Z-Man Fishing Prods.,* No. 06-2469, 2006 U.S. Dist. LEXIS 75339, at *7 (N.D. Cal. Oct. 6, 2006)(citing *Securities Investor Protection Corp. v. Vigman,* 764 F.2d 1309, 1317 (9th Cir. 2000) and *Decker Coal v. Commonwealth,* 805 F.2d 834, 843 (9th Cir. 1986)).

In the instant case, Race has chosen to bring his claim in California. This choice must be accorded great weight -- even more so given that Race resides in the Northern District. Thus, the balancing of conveniences begins with the weight cast heavily

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

Plaintiff's Opposition to Defendant's Motion to Change Venue    5

against transfer.[1]

Defendants assert that because the operative facts at issue in Race's claims did not occur in California, his choice of forum is entitled to little deference. (Def.'s Motion 7). This argument is based on a misleading characterization of Race's breach of contract claim and a distortion of the operative events pertinent to that claim. Specifically, Defendants attempt to frame the instant matter as one regarding the "issuance of stock options." But Race's claim is nothing more than a straightforward, "garden variety" breach of contract claim, which does not require the interpretation or application of any stock option plan. Moreover, the only "breach" at issue is Defendant's failure to fully compensate Race for his services as a Board member, as Bally was obliged to do under the Compensation Agreement. The fact that the compensation due Race is in the form of stock options, rather than cash is of little factual or legal significance.

The operative events in this matter are as simple as the claim itself. They include only those facts related to the execution and negotiation of the Compensation Agreement, and Bally's breach of that Agreement. The Compensation Agreement was executed in California, where Race orally agreed to serve as a Director.[2] Since the

---

[1] Although Bally's principle place of business is in the District of Nevada, this fact does not weigh in favor of transfer. When the plaintiff resides in the chosen forum and the defendant resides in the proposed transferee district, the weight given to the plaintiff's choice of forum will tip the balance against transfer. 17 MOORE'S FEDERAL PRACTICE § 111.13(1)(e)(Matthew Bender 3d ed.). Thus, Bally's "residence" in the District of Nevada should be of no consequence to the Court's determination.

[2] When a contract is entered into orally by telephone, the place of contracting is the place where the acceptor speaks. See, e.g., Travelers Ins. Co. v. Work. Comp. App. Bd. , 68 Cal.2d 7, 14 (1967); c.f. Langford, 2006 US Dist LEXIS at *19 (where the agreements at issue were made over the phone when the plaintiff was in

terms of Director compensation are set by Bally's bylaws, there was no true "negotiation" of the Agreement - the terms of Race's compensation were offered to him on a "take it or leave it" basis. Thus, the "location" of contract negotiations is of no importance in this matter.

Although Defendant's breach - that is, Bally's refusal to meet its obligations under the Compensation Agreement - may have occurred in Nevada, it would be inappropriate to give Bally's wrongful conduct significant weight in determining the appropriate forum. See *Healthtrac Corp.*, 2005 U.S. Dist. LEXIS at *10-11 (finding that it is not in the interest of justice to deny plaintiff's choice of forum based on the location of defendant's alleged wrongdoing).

Moreover, where the operative events occur in both the plaintiff's chosen forum and elsewhere, and the plaintiff is a resident of the chosen forum, the plaintiff's choice of forum still merits substantial deference. See *Healthtrac, supra* (holding that plaintiff's choice of forum should be given no less deference due to the fact that events giving rise to the claims took place in the Central District of Illinois as well as in the Northern District of California.); *see also Applied Elastomerics, Inc.* 2006 U.S. Dist. LEXIS at *9 (distinguishing *Pacific Car & Foundry Co. v. Pence*, 403 F.2d 949 (9th Cir. 1968)). Because the Compensation Agreement was executed in California, some of the operative events at issue occurred in Race's of choice of forum and that choice should not be disturbed.

---

California, his chosen forum, no finding that the defendant's choice of forum was more appropriate).

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

Plaintiff's Opposition to Defendant's Motion to Change Venue                    7

**B. Because California has a strong interest in enforcing the contracts of its residents, it is in the interest of justice to deny transfer.**

When transfer would undermine the public policies of the forum state, transfer is not "in the interest of justice." *See e.g. Red Bull v. Best Western*, 862 F.2d 963, 967 (2d Cir. 1988). It is the public policy of California that residents be able to obtain redress for grievances in California courts, which are maintained by the state for their benefit. *Thomson v. Continental Ins. Co.*, 66 Cal. 2d 738, 742-743 (1967).

Race is a California resident who entered into a contract with Bally. That contract was executed in California. When Bally offered Race a position on its Board, it was aware that Race resided in California. Given of the state of California's interest in providing a forum for its residents, it would not be in the interest of justice to transfer this case to Nevada. This suit should remain in California, so that the state may ensure proper enforcement of the contracts of its residents.

**C. Bally has not made a strong showing of inconvenience such that Race's choice of forum should be disturbed.**

Defendants assert that several factors weigh in favor of transferring this matter to the District of Nevada. But again, Bally's argument is largely dependant on a misleading characterization of Race's claim. When Race's claim is taken for what it is – a simple breach of contract action – it is clear that any inconvenience to Bally will be slight at best and certainly not strong enough for Bally to meet its burden under Section 1404(a).

**1. The appropriate choice of law carries little weight in a "garden variety" breach of contract claim.**

In addition to confusing the true nature of the operative events at issue in Race's claim, Defendants' mischaracterization of Race's claim conveniently bolsters their

assertion that Nevada law must be applied to the instant litigation. By asserting that Race's claim is "a dispute regarding stock options," and thus subject to the internal affairs doctrine, Defendants conclude that Nevada law must apply to the instant matter.[3] The internal affairs doctrine is, however, <u>entirely irrelevant</u> to the instant litigation. That doctrine applies to a corporation's *relationship to its shareholders*. See Restat 2d of Conflict of Laws, § 302. Matters falling within its scope thus include events such as:

> steps taken in the course of the original incorporation, the election or appointment of directors and officers, the adoption of by-laws, the issuance of corporate shares, preemptive rights, the holding of directors' and shareholders' meetings, methods of voting including any requirement for cumulative voting, shareholders' rights to examine corporate records, charter and by-law amendments, mergers, consolidations and reorganizations and the reclassification of shares.

*Id.* Given the scope of the internal affairs doctrine, it is not surprising that of those cases relied on by Defendants in support of their assertion that Nevada law should apply, <u>not one</u> involves a simple breach of contract claim.[4] The reason for this is simple - the internal affairs doctrine is inapplicable to such claims.

Even assuming Nevada law governed this "garden variety" breach of contract action, this factor carries little weight because the action does not involve complex

---

[3] In addition to suggesting that this case involves a matter of internal corporate governance, Bally implies that the choice of law clause contained in the stock option agreements between Bally and Race somehow requires application of Nevada law in this matter. (Def's Motion at 3; Lerner Decl. at ¶ 6). But this matter has nothing to do with the <u>existing</u> stock option agreements between Bally and Race. This matter pertains to Bally's <u>failure to issue</u> certain stock in the first place. The choice of law clause in a stock option agreement that does not exist certainly does not require the application of Nevada law.

[4] *Rogers v. Guaranty Trust Co.*, 288 U.S. 123 (1933)(shareholder suit to cancel sale of certain stock); *Edgar v. Mite,* 457 U.S. 624 (1981)(involving the constitutionality of an Illinois Act requiring registration of certain takeover offers); *Gaynor v. Buckley*, 318 F.2d 432 (9th Cir. 1963)(shareholder suit to cancel certain stock options).

questions of state law. When the issues presented are neither complex nor specialized, the applicability of the forum court's law is neutrally weighted or, at best, accorded slight weight. See *Scheidt v. Klein,* 956 F.2d 963, 966 (10th Cir. 1992) (relative simplicity of common law fraud and breach of contract issues neutralizes this factor); *S-Fer Int'l v. Paladion Partners,* 906 F. Supp. 211, 2 15-216 (D.N.Y. 1995) (when no complex issues of California law applied, New York court was capable of applying relevant law); *Eye Laser Care Ctr., LLC. v. MDTV Med. News Now, Inc.,* 2007 U.S. Dist. LEXIS 72744, at *6 (N.D. Cal. 2007)(holding that court's familiarity with relevant law is a neutral factor where "the breach of contract claims and defenses are of the garden variety sort with which all federal courts are well-versed" );17 MOORE'S FEDERAL PRACTICE § 111.13.(1)(m).

Thus, whether California or Nevada law applies to the instant litigation, the Northern District will be quite familiar with the applicable law. This Court is entirely capable of adjudicating this simple matter, which involves little more than the most fundamental concepts of contract law: offer, acceptance and consideration. The appropriate choice of law in this matter thus does not favor transfer.

2. **The sources of proof relevant to Race's breach of contract claim are easily accessed from the Northern District of California.**

Although the location of witnesses and evidence is relevant to a Section 1404(a) analysis, the moving party is obligated to specifically identify the key witnesses and evidence and provide a statement as to why the witnesses and evidence are necessary. *Heller Financial, Inc. v. Midwhey Powder Co.,* 883 F.2d 1286, 1293 (7th Cir. 1989).

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

Plaintiff's Opposition to Defendant's Motion to Change Venue

10

### a. Convenience of the witnesses

From Plaintiff's perspective, the only testimony material to this relatively straightforward breach of contract case is that related to the formation and terms of Race's Compensation Agreement. Race's testimony will obviously be of primary importance, and he resides in California. Other than Race, Plaintiff considers Andre's testimony to be relevant to establishing both the formation and terms of the Compensation Agreement. Andre resides in New Jersey. (Lerner Decl. at ¶ 8). Finally, Mark Lerner, who resides in Nevada, will no doubt be an important witness with respect to the terms of the Agreement. Because these three witnesses reside in three different states, the convenience of witnesses factor is "a wash" and the presumption in favor of Race's choice of forum still prevails.

Bally asserts that transfer to the District of Nevada would be vastly more convenient to witnesses. Here again, Bally's argument is founded on a needlessly baroque representation of Race's claim. Although Bally has identified many more potential witnesses than has Plaintiff, the testimony of most of these witnesses is largely irrelevant or of marginal materiality. Defendants have not explained why the Chief Financial Officer, Corporate Accounting Officer, stock option administrator, accounts payable department personnel, or any of the employees in the tax department would be material witnesses in determining the proper interpretation of Race's Compensation Agreement. See *Lerner Decl.* at ¶ 8. Instead, Defendants imply that the testimony of these witnesses would relate to the "issuance of stock options." But as discussed above, this is a misleading characterization of Plaintiff's claim. This claim does not require the interpretation or application of any stock option plan. It only requires interpretation of the Compensation Agreement.

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292

Plaintiff's Opposition to Defendant's Motion to Change Venue

11

### b. Location of the evidence

Bally has not made any showing that it would be prejudiced by having to produce physical evidence in the Northern District. First, this matter involves the breach of an oral agreement. Second, any relevant physical evidence in this breach of contract action is entirely documentary in nature. Given the low cost of transporting documents, this factor is of little weight . See 17 MOORE'S FEDERAL PRACTICE § 111.13(1)(h). Finally, the documents Plaintiff considers to be operative are hardly voluminous in nature. They include little more than the proxy statement and Bally's bylaws. Bally has not provided sufficient proof that it would be prejudiced if required to produce these few material documents in California. See Langford, 2006 U.S. Dist. at *27 (holding that in a breach of contract case, where the contracts and any written manifestations of the parties' agreements do not appear to be voluminous, there was no showing of prejudice sufficient to trump the factors weighing against transfer).

### 3. Location where agreement was negotiated and executed.

As discussed above, the Compensation Agreement was entered into in California, where Race accepted Bally's offer to serve on its Board of Directors and agreed to the terms of compensation. There was no real negotiation of the terms of the Compensation Agreement, as, according to Bally, those terms are set by Bally's bylaws. This factor therefore does not weigh in favor of transfer. See e.g., Applied Elastomerics, Inc., 2006 U.S. Dist. LEXIS at *21 (finding that where the agreement at issue was executed and negotiated in both districts, this factor does not weigh in favor of transfer).

### 4. Costs of litigation

Again, the cost of transporting the few documents relevant to this breach of contract case is minimal. Moreover, the travel costs for the three primary witnesses -- Race, Andre and Lerner -- would be the same for either party. If the forum is Nevada, Plaintiff will be required to travel. If the forum is California, Lerner would be required to travel. And in either case Andre will be required to travel from New Jersey. Moreover, Bally, a large corporation, is better able than Race, an individual, to bear any additional costs associated with the litigation. But again, Plaintiff fully expects the costs of this litigation to be low and believes that the entire matter could well be resolved on the papers. The relative costs of litigation thus do not weigh in favor of transfer.

### 5. Contacts with the forum

Whether or not Bally is *currently* registered to do business in California, Bally continues to have a number of contacts with the state.[5] During the time that Race served as a Director, Bally sold a large number of gaming devices and slot floor management software in the state of California. Bally has also leased some of these machines to various businesses in California. Finally, Bally has entered into a number of contracts with residents of the state of California.

### IV. CONCLUSION

In order to justify transfer to the District of Nevada, Bally must do far more than merely tip the scales - Bally must show <u>compelling reasons</u> for the transfer. Bally has failed to meet this burden. After considering each of the factors discussed above, it is

---

[5] Bally asserts that it is not currently licensed to do business in the state of California, but makes no representation as to whether it was so licensed at the time it entered into the Compensation Agreement with Race. (Lerner Decl. at ¶3).

clear that Defendants have failed to overcome the great weight that must be accorded Race's choice of forum. The very few factors that might weigh in favor of transfer to the District of Nevada are of comparatively little importance and are certainly not of sufficient import to carry Defendants' burden. The balance of conveniences simply does not "strongly" favor transfer.

DATED:     December 19 , 2007

McGUINN, HILLSMAN & PALEFSKY
Attorneys for Plaintiff

By: _____
Cliff Palefsky