1  ETHAN D. DETTMER, SBN 196046
   edettmer@gibsondunn.com
2  JAIME D. BYRNES, SBN 237991
   jbyrnes@gibsondunn.com
3  GIBSON, DUNN & CRUTCHER LLP
   One Montgomery Street
4  San Francisco, California 94104
   Telephone: (415) 393-8200
5  Facsimile: (415) 986-5309
6
7  Attorneys for
   BALLY TECHNOLOGIES, INC.
8
9
                    UNITED STATES DISTRICT COURT
10        FOR THE NORTHERN DISTRICT OF CALIFORNIA
                     SAN FRANCISCO DIVISION
11

12

13  STEPHEN RACE,                          CASE NO. C07-5475 CW

14            Plaintiff,                    **REPLY IN SUPPORT OF MOTION TO
                                            CHANGE VENUE TO THE UNITED
15        v.                                STATES DISTRICT COURT FOR THE
                                            DISTRICT OF NEVADA PURSUANT TO
16  BALLY TECHNOLOGIES, INC.,               28 U.S.C. § 1404(a)**
    a Nevada Corporation,
17
            Defendant.
18                                          Date: January 10, 2008
                                            Time: 2:00 p.m.
19                                          Judge: Hon. Claudia Wilken

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

REPLY IN SUPPORT OF MOTION TO CHANGE VENUE - 28 U.S.C. § 1404(a)          CASE NO. C07-5475 CW

## MEMORANDUM OF POINTS & AUTHORITIES

### I. INTRODUCTION

This dispute is between a Nevada-based, Nevada-incorporated company and one of its former directors. The director received stock currently valued at over $1 million, in exchange for serving upon the Board for less than two years, but now alleges that he is entitled to still more compensation.

The court will be required to interpret the bylaws governing compensation, to determine a fundamental issue of internal affairs – how much compensation the company is required to pay its directors. Nevada's ordinarily strong public policy interest in providing a forum for disputes involving its companies' internal affairs is even stronger here, because the determination will require resolving an apparent issue of first impression in the Nevada courts that will apply to other Nevada corporations. At the same time, there is a particularly acute concern that because no other directors reside in California, Bally will be subject to contradictory interpretations of its bylaws in different states' courts, even if all the courts attempt to apply Nevada law. Not only does the internal affairs doctrine apply to this case, the underlying concerns are all at their zenith.

Unsurprisingly, the relevant witnesses and documents are almost all located in Nevada. The only witness located in California is the plaintiff himself. The only evidence in California is that which is in his possession – which he admits is few, if any, documents. As a result, the costs of litigating in California will be substantially higher than the cost of a Nevada proceeding. Finally, because this is an issue of first impression, the importance of familiarity with the governing law is heightened. While these factors alone strongly suggest a Nevada forum, the unique issues presented by this case's implication of the internal affairs doctrine makes it clear that a Nevada court rather than this one, should bear the burden of the case.

### II. ANALYSIS

**A. The Internal Affairs Doctrine Applies and Substantially Favors A Nevada Forum.**

Everything about this case centers upon Nevada, save for Race's California location. Race contends that as a plaintiff, it is his prerogative to sue in California, and that this court should not give any weight to all of the factors pointing toward Nevada as the more convenient location – even though he effectively admits that almost all of these factors do favor Nevada. *See infra*, II.B.

1

1    Unlike Race, Bally does not seek a Nevada forum for mere convenience. Bally seeks a

2    Nevada forum because this case will implicate fundamental issues of internal corporate governance

3    for Bally. Race's attempt to couch his claim as a "'garden variety' breach of contract claim," devoid

4    of any issues of internal governance, is belied by his own admission that this dispute implicates the

5    "terms of Director compensation [which] are set by Bally's bylaws." Opp. Br. at 7.

6    It is well-established that the relationship between a company and its Board are fundamental

7    issues of internal affairs.[1] The interpretation of a company's bylaws and the intent of the Board are

8    likewise matters of internal affairs.[2] So too are questions of entitlement to stock.[3] There can be no

9    question that interpreting a corporation's bylaws and the Board's intent to determine the

10   compensation due to the Board of Directors is a quintessential matter of corporate governance subject

11   to the internal affairs doctrine. *See Munson Transp. v. Hajjar*, 148 F.3d 711, 714 (7th Cir. 1998)

12

13   _____

14   [1] *Edgar v. Mite*, 457 U.S. 624, 645 (1982) ("The internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs – matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders – because otherwise a corporation could be faced with conflicting demands."); *Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1527 (9th Cir. 1985) (applying internal affairs doctrine to indemnification of directors); Restat. 2d of Conflict of Laws § 302 (the internal affairs doctrine includes "the election or appointment of directors and officers").

15

16

17

18   [2] Restat. 2d of Conflict of Laws § 302 (the internal affairs doctrine applies to "the adoption of by-laws"); *see also Miesse v. Seiberling Rubber Co.*, 264 A.D. 373 (App. Div. 1942) (court refused to require a Delaware corporation, which was being reorganized in Delaware, to redeem preferred stock in accordance with its certificate of incorporation since such action involved internal affairs of corporation).

19

20

21

22   [3] Restat. 2d of Conflict of Laws § 303 ("The state of incorporation will usually be the state of most significant relationship [as to questions about who is a shareholder], because (1) this state will usually have the dominant interest in the question of what persons are shareholders of the corporation, (2) the parties, to the extent that they think about the matter, would usually expect to have this issue determined by the local law of this state or, at least, by the law that would be applied by the courts of this state and (3) this state is easy to identify with the result that application of its law will satisfy the choice-of-law policy of ease of application'); *id.* § 302, comment f ("It is important that the validity of an entire share issue should be governed by a single law, because it would be impractical to have an entire issue held valid in some states and invalid in others."); *cf. Rogers v. Guaranty Trust Co.*, 288 U.S. 123 (1933) (applying internal affairs doctrine to dispute over sale of certain stock).

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

REPLY IN SUPPORT OF MOTION TO CHANGE VENUE - 28 U.S.C. § 1404(a)          CASE NO. C07-5475 CW

1  (applying the internal affairs doctrine to the issuance of stock options); *see also, e.g., Vannoy v. Verio*

2  *Inc.*, 2004 U.S.Dist. LEXIS 14713, *11 (N.D. Tex. 2004) (holding that claim for breach of oral

3  contract to issue stock options to an employee is within the scope of the internal affairs doctrine, even

4  though the challenge involved options exclusive to the plaintiff and not a company-wide stock plan),

5  *vacated on other grounds*, 146 Fed. Appx. 753 (5th Cir. 2005) (affirming application of law of state

6  of incorporation, vacating judgment, and ordering a new trial on the basis of law of state of

7  incorporation).

8          At its core, the internal affairs doctrine recognizes that as to fundamental issues of corporate

9  governance, a corporation cannot be subjected to differing or inconsistent obligations. "It has long

10  been settled doctrine that a court – state or federal – sitting in one State will as a general rule decline

11  to interfere with or control by injunction or otherwise the management of the internal affairs of a

12  corporation organized under the laws of another State but will leave controversies as to such matters

13  to the courts of the State of the domicile." *Rogers v. Guaranty Trust Co.*, 288 U.S. 123, 130 (1933).

14  Despite Race's attempts to characterize his claim as a mere breach of contract action, this court will

15  necessarily interfere with and have a de facto injunctive effect upon the interpretation of Bally's

16  bylaws and its own Board's intent regarding director compensation.

17          The internal affairs doctrine further recognizes that "many matters involving a corporation

18  cannot practicably be determined differently in different states…. It would be impractical, for

19  example, if an election of directors, an issuance of shares, [or] a payment of dividends … were to be

20  held valid in one state and invalid in another." Restat. 2d of Conflicts of Laws § 302, Comment (e).

21  Likewise, because the bylaws determine how compensation is set for all directors, the company

22  cannot be subjected to differing obligations regarding the issuance of shares or options, or cash

23  payments. Rather, one rule must apply to all directors, regardless of the state in which each resides or

24  chooses to perform some portion of his duties.

25          The key issue in this case – whether stock options granted to board members are prospective

26  or retrospective – is not one that has been addressed by the Nevada courts. Issues of first impression

27  trigger a heightened need for adjudication by the court whose law is being applied. *See Van Dusen v.*

28

3

1  *Barrack*, 376 U.S. 612, 645 (1964).[4] While this court could offer a very well-reasoned analysis of the

2  issue, it is no guarantee the Nevada courts would reach the same conclusion, and there is little doubt

3  that a federal court sitting in Nevada will be much better positioned to anticipate and interpret

4  Nevada jurisprudence in this area. The risk of inconsistent obligations then becomes clear – Race is

5  *the only current or former Director residing in California.* If each director's challenge on a novel

6  question of Nevada state law is heard by a court in his home state, Bally could very easily find itself

7  subject to contradictory decisions as to when, how, and how much it is obliged to pay its Directors.

8          Finally, the internal affairs doctrine recognizes the substantial interest a state has in providing

9  a forum for disputes involving the internal affairs of its corporations. *See e.g.*, *CTS Corp. v.*

10  *Dynamics Corp. of America*, 481 U.S. 69, 91, 93 (1987) (recognizing that "[a] State has an interest in

11  promoting stable relationships among parties involved in the corporations it charters" and "a

12  substantial interest in preventing the corporate form from becoming a shield for unfair business

13  dealing."); *Sample v. Morgan*, ---A.2d ---, available at 2007 WL 4207790 (Del. Ch. 2007) ("As

14  sophisticated practitioners of corporate law, the moving defendants realize that Delaware, as a

15  chartering state, has an important interest in regulating the internal affairs of its corporations, in order

16  to ensure that the directors and officers of Delaware corporations honor their obligations to operate

17  the corporation lawfully and in the best interest of the corporation's stockholders. The United States

18  Supreme Court has long recognized the legitimacy and importance of a state's interest in regulating

19  the internal affairs of its corporations.").

20          Contrary to Race's contentions, this dispute is squarely within the scope of the internal affairs

21  doctrine, and should be resolved in the courts of Nevada – the state of Bally's principle place of

22  business and incorporation.

23  _____

24  [4] *See also Ryan v. Gifford*, 918 A.2d 341, 349-50 (Del.Ch. 2007) ("Delaware courts have a

25     'significant and substantial interest in overseeing the conduct of those owing fiduciary duties to
   shareholders of Delaware corporations.' This interest increases greatly in actions addressing

26     novel issues.") (quoting *In re Chambers Dev. Co. S'holders Litig.*, 1993 WL 179335, at *8 (Del.
   Ch. 1993)); *MacAndrews & Forbes Holdings, Inc. v. Revlon, Inc.*, 1985 WL 21129, at *2 (Del.

27     Ch. 1985) ("novel and substantial issues of Delaware corporate law ... are best resolved in a
   Delaware court").

28

4

Gibson, Dunn &
Crutcher LLP

**B. Race Admits That Almost All of the Factors This Court Must Assess Favor Nevada.**

In his opposition, Race effectively admits that almost all of the factors this court must assess favor Nevada. Race admits that this court must apply a multi-factor test, and, oddly, simultaneously argues that this court should not give any practical weight to these multiple factors. Essentially, Race argues that his residence in California should be dispositive, notwithstanding the multi-factor test and the internal affairs doctrine.

*1. The Parties Reside in California and Nevada..*

There is no dispute that Race resides in California, while Bally is incorporated and has its principle place of business in Nevada. While the plaintiff's selection of his residence is entitled to some deference, this is not dispositive. It is *a* factor to be considered along with all the other factors. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988) ("focusing on a single concern or a subset of the factors identified in § 1404(a) would defeat [Congress's] command"). Here, as described below, those factors substantially weigh in favor of Nevada. This balance is tipped even further in favor of Nevada by the internal affairs doctrine and the novelty of the issue presented by this case under Nevada law.

*2. The Evidence Is In Nevada.*

Race does not deny that the evidence in this case is in Nevada. In an attempt to avoid admitting that this factor too favors Nevada, he asserts that this case involves nothing more than the breach of an oral agreement – suggesting there are few or no relevant documents. Opp. Br. at 12. However, elsewhere in the same opposition, Race admits that the terms of his compensation were determined as set by the bylaws and the intent of the Board. Therefore, even if he is correct in asserting that he is only bound by the oral agreement, it incorporated by reference the bylaws and the resolution of the board of directors. Indeed, by the end of the same paragraph, Race admits that he intends to seek the proxy statement and Bally's bylaws. It is not unlikely that, by the time discovery begins, Race's shifting position will cause him to seek even more discovery. The presence of substantially all of the evidence in this case in Nevada is a factor this court is directed to weigh, along with all the others, in coming to a determination.

*3. Race Admits Nevada Is Vastly More Convenient to the Witnesses Listed.*

5

Gibson, Dunn &
Crutcher LLP

1    Race admits that he, Jac Andre and Mark Lerner will be essential witnesses in this case, and

2    that as between them convenience is "a wash" since the three reside in different states. Opp. Br. at 11.

3    As a threshold matter, this assertion is simply untrue, since Lerner resides in Nevada and Andre

4    travels there frequently for business. However, more fundamentally, to even reach the conclusion that

5    witness convenience is "a wash" Race ignores the fact that Bally has the right to have testimony

6    presented in its defense by its proposed witnesses. The individuals listed are those tasked with

7    determining and executing the transfer of options to directors – the very issue in dispute in this case.

8    It is difficult to conceive that these individuals would not be witnesses in this case, testifying to

9    Bally's standard procedure for calculating compensation due directors, the payouts made to Race

10   during his tenure at Bally, and the reasons he did not receive the options he alleges he was owed. Far

11   from a wash, this factor strongly favors Nevada.

12       *4. Location Where Contract Was Negotiated and Entered Into.*

13       Race contends that "the place of contracting is the place where the acceptor speaks." Opp. Br.

14   at 6. As pointed out above, the compensation of directors is set by the bylaws and by resolutions of

15   the board of directors. There is no separate written contract between Bally and Race establishing

16   what compensation he is entitled to, nor does it appear that such a contract would be valid except

17   perhaps if the contract were adopted by a resolution of the board.

18       However, even accepting for convenience Race's contention that his compensation was fixed

19   by contract, his contract analysis is flawed. Fundamental corporations law states that a corporation

20   cannot name a new director without an approving vote, and thus Race did not become a director (and

21   the purported contract was not officially entered into), until there was a vote electing Race to Bally's

22   board. Bylaws Art. II, § 1 (sixth subsection); Art. III, §§ 3, 9. Here, Race offered to serve on the

23   Board, during the initial call with Andre. The Board then convened and voted to appoint Race to the

24   Board with the adoption of a resolution appointing Race to serve as a Director. As a result, even

25   applying the test commended by Race, the contract was not executed in California.

26       In any event, as both parties acknowledge, "the terms of Director compensation are set by

27   Bally's bylaws," Opp. Br. at 7, which in turn delegate this decision to the board of directors. Race

28   does not dispute that these bylaws were created in Nevada. While Race concludes that the location of

6

REPLY IN SUPPORT OF MOTION TO CHANGE VENUE - 28 U.S.C. § 1404(a)          CASE NO. C07-5475 CW

1    the contract negotiations "is of no importance" in this matter, notwithstanding its inclusion as a factor

2    in the venue test, he does not cite a single case supporting his proposition. *See id.*

3         *5. Race Admits The Events At Issue Took Place In Nevada.*

4        Race admits that the alleged breach occurred in Nevada. Neither of Race's arguments in

5    opposition support disregarding this factor. First, Race suggests that it is inappropriate to give Bally's

6    allegedly wrongful conduct significant weight in determining the forum. However, the issue here is

7    one of internal corporate governance and Board intent, which requires that weight be given to the

8    state of incorporation. Indeed, the very nature of the director-company relationship supports

9    adjudicating any disputes at the location of the corporation.

10       Second, Race argues that the fact that he happened to be on the phone from California at the

11    time he alleges he accepted the purported contract should be considered an operative event

12    substantial enough to counterbalance the fact that all of the other operative events occurred in

13    Nevada. Even if the purported contract were entered into in California (which it was not), all of the

14    cases Race cites involve something more than mere execution. *See Healthtrack Corp. v. Caterpillar*

15    *Inc.*, 2005 U.S. Dist. LEXIS 25272, at *10-11 (N.D. Cal. 2005) (relying upon negotiation, execution

16    and performance, as well as far more equal split as to other factors including documents and

17    witnesses); *Applied Elastomerics, Inc. v. Z-Man Fishing Prods.*, 2006 U.S. Dist. LEXIS 75339 at *8-

18    9 (N.D. Cal. 2006) (same).

19         *6. Parties Contacts with the Forum.*

20       As stated in Bally's motion, Bally is not registered to do business in California, nor does it

21    conduct business in California. *Id.*[5] Race suggests that Bally is engaged in careful wordsmithing to

22    avoid admitting that Bally carries on significant business in the state. See Opp. Br. at 13 & 13 n.5.

23    That inference is simply untrue. Bally, the company on whose board Race served and which Race

24    named as defendant, is not and has never been licensed to do business in the State of California.

25    Lerner Decl. at ¶ 3.

26

27    [5]   Bally does have one subsidiary (whose activities are unrelated to this action) that is registered to
         and does conduct business in California.

28

REPLY IN SUPPORT OF MOTION TO CHANGE VENUE - 28 U.S.C. § 1404(a)      CASE NO. C07-5475 CW

*7. Race Erroneously Contends That Cost Is A Neutral Factor.*

Plaintiff suggests that the costs of litigating in either forum are nearly equal, on the theory that someone will ultimately need to travel. If the case is litigated in Nevada, Race will need to bring his admittedly minimal documents and take the short plane trip to Las Vegas. But if the case is litigated in California, many of Bally's most sensitive corporate documents and numerous employees, officers, and directors will all be required to travel to California. Not only will this be at considerable expense, but considerable loss of time as this case involves the company's most senior executives and Board members. This type of burden is precisely calculated to attempt to extract a settlement from the company, without regard to the merits of the case (or lack thereof). In contrast, were the case transferred to Las Vegas, it would be significantly more convenient for the Bally officers and employees who live and work in Las Vegas, as well as for Board members living in other states, who ordinarily are in Nevada quarterly for Bally company business.

Finally, Race contends that as an individual he is not as able to bear additional costs associated with litigation. Race earned stock options that entitled him to buy stock now valued at over $1,356,300, in addition to his $50,000 in cash per year, in compensation for serving on Bally's board for less than two years. Lerner Decl. at ¶ 4. The cost of litigating in Las Vegas cannot reasonably be viewed as a hardship to him compared to the hardship faced by Bally at the prospect of litigating in California.

## IV. CONCLUSION

Nevada is the clear locus of this dispute about the internal affairs of a Nevada corporation and its relationship with its directors. The § 1404(a) factors weigh in favor of Nevada, where most of the witnesses and evidence are located. This case should properly be heard in Nevada, not California.

DATED: December 26, 2007            GIBSON, DUNN & CRUTCHER LLP

By: /s/ .
                                                    Jaime D. Byrnes

Attorneys for Bally Technologies, Inc.

8

REPLY IN SUPPORT OF MOTION TO CHANGE VENUE - 28 U.S.C. § 1404(a)            CASE NO. C07-5475 CW

Gibson, Dunn &
Crutcher LLP